# EXHIBIT A

FILED
10-23-2017
John Barrett
Clerk of Circuit Court
2017CV010128
Honorable Timothy
Witkowiak-22
Branch 22

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

---

**CITGO PETROLEUM CORPORATION,**

      Plaintiff,

    vs.

**MTI CONNECT, LLC d/b/a BLACK CANYON,**

and

**MGAGE, LLC,**

      Defendants.

Case No. _____
Case Code:  30303

---

## CITGO PETROLEUM CORPORATION'S COMPLAINT AGAINST MTI CONNECT, LLC AND MGAGE, LLC

---

Now comes Plaintiff CITGO Petroleum Corporation ("CITGO"), and for its complaint against MTI Connect, LLC d/b/a Black Canyon ("Black Canyon") and mGage, LLC ("mGage"), states and alleges as follows:

### Events Giving Rise to the Claims

1.　　Beginning in 2015, CITGO sponsored a number of text-to-win sweepstakes contests at various concert venues, amusement parks, and other smaller events, as well as contests advertised at gas stations and held open to the public. One purpose of the contests was to obtain entrants' mobile phone numbers for future text-based promotions. CITGO engaged a vendor, Black Canyon, to administer the programs and Black Canyon in turn contracted with mGage, a technology company, for use of its proprietary text-messaging service to conduct the program.

2.      Each sweepstakes program was supposed to employ a "double opt-in protocol" whereby the contestants were required to "Reply 'Y'" to a confirmatory text that, among other things, solicited their consent to receive future texts from CITGO ("Up to 4 msgs/mo."). The rules of the sweepstakes (which were also supposed to be linked in this confirmatory text) contained additional disclosures about future texts sent on CITGO's behalf.

3.      In August, October, and November 2016, using mGage's text-messaging service, Black Canyon sent text messages on CITGO's behalf to tens of thousands of people whose numbers Black Canyon had obtained during the sweepstakes contests. Matthew Gottlieb received the text messages, and in November 2016 he filed a class-action lawsuit against CITGO in a Florida federal court under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.

4.      CITGO learned from documents it obtained in discovery during the *Gottlieb* action that Plaintiff Gottlieb and tens of thousands of other sweepstakes entrants did not receive the confirmatory "Reply 'Y'" opt-in text, contrary to the double opt-in protocol that CITGO had authorized and approved and that Black Canyon had promised to use. Black Canyon believes and has represented to CITGO that any failure to send the confirmatory "Reply 'Y'" text was caused by an error in the mGage text-messaging service.

5.      In July 2017, CITGO agreed to settle Gottlieb's claims against it on a class-wide basis for $8 million plus up to $300,000 in settlement administration costs. While CITGO denied that its text messages violated the TCPA, Black Canyon and/or mGage's failure to send the confirmatory "Reply 'Y'" text to Gottlieb and a large number of other members of his purported classes provided a non-frivolous basis on which Gottlieb could sue CITGO, forced CITGO to incur substantial costs and fees to defend against Gottlieb's claim, and created a risk

that the court would reject CITGO's position and find it liable for TCPA violations and for

statutory damages that could total $300 million. While CITGO might have prevailed had it

continued to litigate the Gottlieb case on the merits, the failures of Black Canyon and/or mGage

created a not-insignificant risk of a substantial adverse judgment. The settlement which CITGO

made was a reasonable way to end the litigation, stop defense costs and attorneys' fees, eliminate

the risk of a sizable adverse judgment, and thereby mitigate the damages flowing from Black

Canyon and/or mGage's conduct.

### Parties

6.      CITGO is a Delaware corporation with its principal place of business in Houston,

Texas.

7.      MTI Connect, LLC d/b/a Black Canyon is a limited liability company organized

under the laws of Wisconsin. MTI's principal place of business is in Milwaukee, Wisconsin.

8.      MTI is the successor to First Edge Solutions, Inc. d/b/a Black Canyon, a now-

defunct corporation organized under the laws of Wisconsin with its principal place of business in

Milwaukee, Wisconsin. MTI, which purchased substantially all of First Edge's assets, continues

to do business as "Black Canyon," and employs generally the same people serving the same

clients, is a mere continuation of First Edge, and has acknowledged that it succeeds to First

Edge's duties and liabilities.

9.      Because MTI is a mere continuation of First Edge and succeeds to First Edge's

liabilities, this complaint uses "Black Canyon" to refer to MTI and First Edge interchangeably.

10.     mGage, LLC ("mGage") is a limited liability company organized under the laws

of Delaware. mGage's principal place of business is in Atlanta, Georgia.

## Jurisdiction and Venue

11.     Black Canyon is subject to personal jurisdiction in Wisconsin for this action because it is a Wisconsin limited liability company with its principal place of business in Wisconsin, it is engaged in substantial and not isolated activities in Wisconsin, and it entered into the contracts at issue and attempted to perform those contracts in Wisconsin.

12.     mGage is subject to personal jurisdiction in Wisconsin for this action because it has purposefully directed its activities at Wisconsin and CITGO's injuries arose from mGage's Wisconsin-related activities.

13.     Venue is proper in this court because Black Canyon has its principal place of business in Milwaukee County and because Black Canyon engaged in multiple activities in this county out of which CITGO's claims arise.

## The TCPA

14.     The TCPA prohibits using an "automatic telephone dialing system" ("ATDS" or "autodialer") to "make any call . . . to any telephone number assigned to a . . . cellular telephone service" without the "prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii).

15.     People injured by calls made in violation of the TCPA may bring private suits against the violators.  The TCPA allows a prevailing plaintiff to recover $500 per violation, or $1500 per violation if the plaintiff proves that the violation was willful or knowing.  47 U.S.C. § 227(b)(3), (c)(5).

## CITGO's Text-Messaging Program

16.     In 2015 and 2016, CITGO operated a program to send text messages about CITGO-sponsored promotions to the cell phones of individuals who had consented to receive such messages.

17.    As described in greater detail below, CITGO retained Black Canyon to administer

CITGO's text-messaging program.

18.    Black Canyon in turn retained mGage to handle the technical aspects of CITGO's

text-messaging program, including the actual sending of text messages, because mGage offered

an internet-based text-messaging service that it represented was capable of executing text-

marketing programs in compliance with all relevant law, including the TCPA.

19.    One of the ways that CITGO obtained individuals' cell phone numbers for its

text-messaging program was through text-to-win contests that CITGO sponsored at concerts and

other events, which Black Canyon administered using mGage's technology.

20.    In a text-to-win promotion, CITGO would post advertisements inviting

individuals to send a text message containing a designated keyword, such as "CITGO1", to 774-

86, a short-code phone number that Black Canyon obtained from mGage for use on CITGO's

text-message promotions.

21.    Black Canyon and CITGO agreed that Black Canyon would use a "double-opt-in"

protocol during text-to-win promotions. The double opt-in protocol was designed to ensure that

no text messages would be sent unless the recipients had first provided their prior express

consent to receive the messages, with the ultimate aim of protecting CITGO from liability under

the TCPA. mGage represented and warranted that its services were capable of performing the

"double opt-in" protocol that CITGO specified.

22.    Under the double opt-in protocol, after an individual texted a keyword to 774-86,

Black Canyon (through mGage) would respond with a "confirmatory message" which (1) asked

the person to "Reply 'Y'" to agree to the rules of the promotion and to receive up to four

messages a month from CITGO, (2) disclosed that the rules of the promotion authorized CITGO

7

to send additional text messages to the person, and (3) contained a hyperlink to a website containing the promotion's rules which made further and more detailed disclosures.

23.     Matthew Gottlieb participated in two CITGO-sponsored text-to-win promotions at a Dave Matthews Band concert in West Palm Beach, Florida on July 31, 2015. He texted "CITGO1" to 774-86 to enter to win a $100 CITGO gift card, and he texted "CITGO2" to 774-86 for a chance to upgrade his seats.

24.     Without CITGO's knowledge and contrary to its instructions, during 2015 and 2016 the double opt-in protocol was not followed during some of the contests and was followed incompletely during other contests. Tens of thousands of contest entrants, including Gottlieb, did not receive the "Reply Y message" mandated by the double opt-in protocol. These failures were caused by the actions of Black Canyon, problems with the mGage text-messaging service, or a combination of those factors.

### The *Gottlieb* Action

25.     On November 23, 2011, Gottlieb filed a complaint against CITGO in the United States District Court for the Southern District of Florida under the caption *Gottlieb v. CITGO Petroleum Corporation*, No. 9:16-cv-81911-RLR (S.D. Fla.). The Complaint alleged that CITGO sent text messages to Gottlieb's cell phone by means of an ATDS without Gottlieb's prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Gottlieb sought statutory damages and an injunction against violations of the TCPA, both on his own behalf and on behalf of two putative classes of others who received the same text messages.

26.     Documents produced by Black Canyon and mGage during discovery in the *Gottlieb* matter showed that Gottlieb, along with approximately 30,000 other people, participated in CITGO-sponsored text-to-win promotions but never received a confirmatory "Reply 'Y'"

message in compliance with the double opt-in protocol that CITGO had authorized and Black Canyon had promised to use by employing mGage's text-messaging service.

27.    Documents produced by mGage showed that Black Canyon had sent more than 200,000 text messages on CITGO's behalf to members of Gottlieb's proposed classes. As such, CITGO faced a minimum of $100 million in liability if it lost at trial, with the potential for treble damages if a jury found that CITGO violated the TCPA willfully or knowingly. Although CITGO denied and continues to deny that its text-messaging program violated the TCPA, mGage and/or Black Canyon's failure to adhere to the double opt-in protocol gave Gottlieb a non-frivolous basis to bring the lawsuit, required CITGO to expend significant time and money to defend the case, and created a risk of a substantial adverse judgment, all of which made the settlement a reasonable way to mitigate the damages and harm caused by Black Canyon's and/or mGage's actions and omissions.

28.    On July 19, 2017, CITGO and Gottlieb participated in a mediation session before mediator David Lichter. CITGO invited both mGage and Black Canyon to attend the mediation, but neither company did. At the mediation, CITGO and Gottlieb agreed in principle to settle Gottlieb's claims on a class-wide basis for $8 million plus up to $300,000 in settlement administration costs. That agreement was subsequently documented in a written Settlement Agreement and Release that has been preliminarily approved by the federal court.

## COUNT I – CONTRACTUAL INDEMNIFICATION (Black Canyon)

29.    CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

30.    From 2015 until the present, Black Canyon and CITGO have been parties to a contract (the "Contract") for the text-messaging program.

9

31.     Paragraph 8, Exhibit C of the Contract provides that:

> [Black Canyon] agrees to indemnify fully, hold harmless, and defend CITGO, its owner, affiliates, subsidiaries, and joint ventures, and its and their agents, officers, directors[,] employees, representatives, successors and assigns from and against all damages including, but not limited to, claims, suits, judgments, or expenses (including attorneys' fees) claimed by any entity of federal, state, or local government or any third parties arising out of or in any way connected with [Black Canyon's] negligence (including without limitation strict or absolute negligence or wrongful or otherwise improper acts or omissions) or violations of applicable statutes or regulations.

32.     Although CITGO denies that it violated the TCPA, CITGO's settlement in the *Gottlieb* matter was the result of Black Canyon's failure to ensure that the agreed-upon double opt-in protocol was followed.  Accordingly, Black Canyon is obligated under Paragraph 8, Exhibit C, of the Statement of Work to indemnify CITGO for the full amount of CITGO's settlement as well as the fees and costs that CITGO incurred during the course of the *Gottlieb* litigation.

## COUNT II – BREACH OF CONTRACT (Black Canyon)

33.     CITGO incorporates and realleges paragraphs 1 through 32 of this complaint as the allegations of this paragraph.

34.     Paragraph 10, Exhibit C of the Contract provides that:

> [Black Canyon] agrees to comply with all applicable present and future laws, ordinances, rules and regulations, requirements, and orders of federal, state, or local government or regulatory authorities concerning the Services including, but not limited to, all statutes and regulations enforced by the Federal Communications Commission ("FCC") and Federal Trade Commission ("FTC").

35.     To the extent that CITGO could have been found liable under the TCPA, Black Canyon violated the TCPA as well.  The TCPA is a "law . . . concerning the Services" and a "statute[] . . . enforced by the [FCC]."  So, to the extent that CITGO could have been found liable under the TCPA, Black Canyon breached Paragraph 10, Exhibit C of the Contract.

36.     Black Canyon's breaches of Paragraph 10, Exhibit C of the Contract proximately and foreseeably caused CITGO to suffer significant and concrete harm, including, without limitation, the expenses of defending and settling the *Gottlieb* suit and the injury to CITGO's reputation, customer goodwill, and brand value.

37.     Accordingly, CITGO is entitled to a damages award against Black Canyon for breach of contract.

## COUNT III – AGENCY LAW (Black Canyon)

38.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

39.     Black Canyon acted as CITGO's agent by administering text-to-win promotions and sending text messages on CITGO's behalf.

40.     Although CITGO denies that it violated the TCPA, to the extent that CITGO could have been found liable to Gottlieb and his purported classes, its liability was vicarious as a result of Black Canyon's violations of the TCPA.  CITGO's settlement of the *Gottlieb* action was a reasonable way to resolve that case, eliminate the risk of a significantly larger adverse judgment, and cap (and so mitigate) the damages flowing from Black Canyon's breach of its obligations and duties to CITGO.

41.     Under common law principles of agency, "[a]n agent is subject to liability for loss caused to the principal by any breach of duty."  Restatement (Second) of Agency § 401 (1958); *see also* Restatement (Third) of Agency § 8.08 & cmt. b.

42.     Accordingly, Black Canyon is obligated to compensate CITGO under agency-law principles for the amount of CITGO's settlement in the *Gottlieb* matter and the amount of

CITGO's fees and costs incurred in litigating the *Gottlieb* matter, including settlement administration costs.

## COUNT IV – AGENCY LAW (mGage)

43.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

44.     On information and belief, based on information provided by Black Canyon, the reason that people received text messages sent on CITGO's behalf without having gone through the agreed-to double opt-in protocol was because of an error in mGage's text-messaging service.

a.   The "message flow" for a text-to-win promotion refers to the text messages that mGage's platform was programmed to send to participants in text-to-win promotions.

b.   On information and belief, Black Canyon could program the message flow for a text-to-win promotion into mGage's platform in two ways: (1) manually, by typing the message flow into the platform; or (2) pressing a button labeled "duplicate," which was supposed to make the current promotion's message flow identical to an earlier promotion's message flow.

c.   On information and belief, as a result of an error in mGage's text-messaging service, pressing the "duplicate" button did *not* make a promotion's message flow identical to that of a previous promotion. Instead, pressing "duplicate" in many cases failed to port over the confirmatory "Reply 'Y'" message to the current promotion's message flow from the previous promotion's message flow.

d.     On information and belief, people received text messages sent on CITGO's behalf without going through the agreed-to double opt-in protocol because of the above-described error in mGage's text-messaging service.

45.     mGage acted as Black Canyon's agent by sending text messages and operating text message flows during text-to-win promotions on Black Canyon's behalf.

46.     mGage was aware that its text-messaging services were being used by Black Canyon to carry out the CITGO text-messaging program.

47.     Black Canyon acted as CITGO's agent by administering text-to-win promotions and sending text blasts on CITGO's behalf.

48.     mGage therefore acted as CITGO's subagent.

49.     Although CITGO denies that it violated the TCPA, to the extent that CITGO could have been found liable to Gottlieb and his purported classes, its liability was vicarious as a result of mGage's violations of the TCPA.  CITGO's settlement of the *Gottlieb* action was a reasonable way to resolve that case, eliminate the risk of a significantly larger adverse judgment, and cap (and so mitigate) the damages flowing from mGage's breach of its obligations and duties to CITGO and/or Black Canyon.

50.     Under common law principles of agency, "[a]n agent is subject to liability for loss caused to the principal by any breach of duty."  Restatement (Second) of Agency § 401 (1958); *see also* Restatement (Third) of Agency § 8.08 & cmt. b.

51.     Agency-law principles also provide that a subagent who knows of the existence of the ultimate principal owes the principal the same duties that the immediate agent owes the

principal.  Restatement (Third) of Agency § 3.15(1) (2006); Restatement (Second) of Agency § 428(1) (1958).

52.     At all relevant times, mGage knew that CITGO existed and that Black Canyon was CITGO's agent.

53.     Accordingly, mGage is obligated to compensate CITGO under agency-law principles for the amount of CITGO's settlement in the *Gottlieb* matter and the amount of CITGO's fees and costs incurred in litigating the *Gottlieb* matter, including settlement administration costs.

## COUNT V – NEGLIGENCE (Black Canyon)

54.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

55.     Black Canyon owed a duty to CITGO to reasonably provide text-promotion administration services and to refrain from negligently causing CITGO to incur liability under the TCPA.

56.     Black Canyon breached its duty of care by failing to follow the double opt-in protocol—to which CITGO had agreed, and which CITGO had instructed Black Canyon to use—for tens of thousands of entrants in text-to-win promotions that Black Canyon administered.

57.     Black Canyon further breached its duty of care by failing to monitor, detect, and correct its widespread failure to use the agreed-to double opt-in protocol in CITGO's text-to-win promotions.

58.     Black Canyon's negligent failure to follow the agreed-to double opt-in protocol, and to monitor, detect, and correct its failure to follow the double opt-in protocol, proximately

and foreseeably caused CITGO to suffer significant and concrete harm, including, without

limitation, the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's

reputation, customer goodwill, and brand value.

## COUNT VI – NEGLIGENCE (mGage)

59.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as

the allegations of this paragraph.

60.     mGage owed a duty to CITGO to reasonably provide text-messaging services and

to refrain from negligently causing CITGO to incur liability under the TCPA.

61.     On information and belief, mGage breached its duty of care by providing

unreasonably defective services.  Specifically, mGage provided a "duplicate" button on its web

platform that mGage represented would allow a user to use a message flow in one promotion that

had previously been used in another promotion.  However, the "duplicate" button unreasonably

failed to import confirmatory "Reply 'Y'" messages from the previous promotions' message

flows.  This error in mGage's text-messaging service caused a widespread failure of the agreed-

to double opt-in protocol in CITGO's text-to-win sweepstakes promotions.

62.     mGage's negligent provision of text-messaging services proximately and

foreseeably caused CITGO to suffer significant and concrete harm, including, without limitation,

the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's reputation,

customer goodwill, and brand value.

## COUNT VII – NEGLIGENT MISREPRESENTATION (Black Canyon)

63.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as

the allegations of this paragraph.

64.     In 2015, Black Canyon made misrepresentations of material fact to CITGO regarding the character and quality of its services.  Specifically, Black Canyon represented that it would send, and had been sending, "double opt-in" messages to all participants in CITGO's sweepstakes promotions, when in fact it did not send double opt-in messages to tens of thousands of such participants.  Those misrepresentations were made under circumstances in which it was unreasonable for Black Canyon to believe the truth of its assertions.

65.     Black Canyon acted negligently in representing that it would use and had used a double opt-in protocol for each participant in the promotions that Black Canyon administered on CITGO's behalf.  Black Canyon could have, and reasonably should have, reviewed the call records and monitored promotions as they were taking place to determine whether the double opt-in protocol was actually being followed.

66.     CITGO believed Black Canyon's representations that it would use and had used a double opt-in protocol for each participant in the promotions that Black Canyon administered on CITGO's behalf.  CITGO also relied on those representations, both by agreeing to allow Black Canyon to administer the promotions in the first place and by sending text messages to promotion participants whom CITGO believed to have completed the double opt-in protocol.

67.     As a direct result of Black Canyon's false representations, text messages were sent in August – November 2016 to individuals who had not completed the double opt-in protocol, and CITGO thereby suffered damages, including, without limitation, the payments to Black Canyon to administer and operate the program, the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's reputation, customer goodwill, and brand value.

**COUNT VIII – STRICT RESPONSIBILITY MISREPRESENTATION (Black Canyon)**

68.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

69.     In 2015, Black Canyon made misrepresentations of material fact to CITGO regarding the character and quality of its services.  Specifically, Black Canyon represented that it would send, and had been sending, "double opt-in" messages to all participants in CITGO's sweepstakes promotions, when in fact it did not send double opt-in messages to tens of thousands of such participants.  Those misrepresentations were made under circumstances in which Black Canyon necessarily ought to have known the truth or untruth of its statements, and Black Canyon had an economic interest in the transaction.

70.     Black Canyon made these misrepresentations of fact under circumstances in which it should have known the truth or untruth of the statements.  Specifically, Black Canyon could have, and reasonably should have, reviewed the call records and monitored promotions as they were taking place to determine whether the double opt-in protocol was actually being followed.

71.     Black Canyon had an economic interest in causing CITGO to believe that a double opt-in protocol would be and had been used for every participant in promotions administered by Black Canyon.  CITGO paid Black Canyon $78,000 annually for its services, and CITGO would not have done so if it had realized that tens of thousands of participants in the promotions administered by Black Canyon would not complete the double opt-in protocol.

72.     CITGO believed Black Canyon's representations that it would use and had used a double opt-in protocol for each participant in the promotions that Black Canyon administered on CITGO's behalf.  CITGO relied on those representations, both by agreeing to allow Black

17

Canyon to administer the promotions in the first place and by sending text messages to promotion participants whom CITGO believed to have completed the double opt-in protocol.

73.    As a direct result of Black Canyon's false representations, text messages were sent in August – November 2016 to individuals who had not completed the double opt-in protocol, and CITGO thereby suffered damages, including, without limitation, the payments to Black Canyon to administer and operate the text-messaging program for CITGO, the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's reputation, customer goodwill, and brand value.

## COUNT IX – NEGLIGENT MISREPRESENTATION (mGage)

74.    CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

75.    Before and during CITGO's use of Black Canyon's services to conduct sweepstakes promotions, mGage made misrepresentations of material fact to Black Canyon regarding the character and quality of its services.  Specifically, mGage represented to Black Canyon that its text-messaging services could be used to send double opt-in messages to participants in promotions administered by Black Canyon on CITGO's behalf, when in fact, on information and belief, an error in mGage's text-messaging service prevented double opt-in messages from being sent to tens of thousands of participants in such promotions.  Those misrepresentations were made under circumstances in which it was unreasonable for mGage to believe the truth of its assertions.

76.    mGage acted negligently in representing that its text-messaging service could be used to send double opt-in messages to participants in the promotions that Black Canyon

administered on CITGO's behalf.  It could have, and reasonably should have, reviewed its technology and discovered the error that prevented double opt-in messages from being sent.

77.     mGage's misrepresentations were in substance repeated to CITGO by Black Canyon and mGage knew and should have foreseen that Black Canyon would repeat those misrepresentations to its customers such as CITGO.

78.     mGage's misrepresentations, as repeated by Black Canyon, caused CITGO to agree to allow Black Canyon to administer its sweepstakes promotions and to send text messages to promotion participants whom CITGO believed to have completed the double opt-in protocol. mGage knew that Black Canyon was operating sweepstakes promotions on CITGO's behalf, and it could have, and reasonably should have, foreseen that its misrepresentations would be relied upon by CITGO and would cause text messages to be sent to people who had not completed the double opt-in protocol.

79.     As a direct result of mGage's false representations, text messages were sent to individuals who had not completed the double opt-in protocol, and CITGO thereby suffered damages, including, without limitation, the cost of the text-message sweepstakes program, the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's reputation, customer goodwill, and brand value.

## COUNT X – STRICT RESPONSIBILITY MISREPRESENTATION (mGage)

80.     CITGO incorporates and realleges paragraphs 1 through 28 of this complaint as the allegations of this paragraph.

81.     Before and during CITGO's use of Black Canyon's services to conduct sweepstakes promotions, mGage made misrepresentations of material fact to Black Canyon regarding the character and quality of its services.  Specifically, mGage represented to Black

Canyon that its text-messaging service could be used to send double opt-in messages to participants in promotions administered by Black Canyon on CITGO's behalf, when in fact, on information and belief, an error in mGage's text-messaging service prevented double opt-in messages from being sent to tens of thousands of participants in such promotions. Those misrepresentations were made under circumstances in which it was unreasonable for mGage to believe the truth of its assertions.

82.     mGage's misrepresentations were in substance repeated to CITGO by Black Canyon and mGage knew and should have foreseen that Black Canyon would repeat those misrepresentations to its customers such as CITGO.

83.     mGage made these misrepresentations of fact under circumstances in which it should have known the truth or untruth of the statements. Specifically, mGage could have, and reasonably should have, reviewed its technology and discovered the error that prevented double opt-in messages from being sent.

84.     mGage had an economic interest in causing Black Canyon and CITGO to believe that its platform could be used to send double opt-in messages to participants in CITGO's sweepstakes promotions. CITGO would not have retained Black Canyon to administer its promotions if it had realized that Black Canyon was using a text-messaging service that could not reliably send double opt-in messages to participants in the promotions, and Black Canyon would therefore not have paid mGage to use its platform to administer CITGO's promotions.

85.     mGage knew or should have known that its misrepresentations would be heard and relied upon by CITGO and would cause CITGO to agree to allow Black Canyon to administer its sweepstakes promotions and to send text messages to promotion participants whom CITGO believed to have completed the double opt-in protocol. mGage knew that Black

Canyon was operating sweepstakes promotions on CITGO's behalf, and it could have, and reasonably should have, foreseen that its misrepresentations would have caused text messages to be sent to people who had not completed the double opt-in protocol.

86.    As a direct result of mGage's false representations, text messages were sent to individuals who had not completed the double opt-in protocol, and CITGO thereby suffered damages, including, without limitation, the cost of the text-message sweepstakes program, the expenses of defending and settling the *Gottlieb* suit, and the injury to CITGO's reputation, customer goodwill, and brand value.

### *PRAYER FOR RELIEF*

WHEREFORE, CITGO Petroleum Corporation respectfully prays that:

A.  The Court enter judgment in favor of CITGO and against MTI Connect, LLC in the amount of: (1) CITGO's reasonable settlement payments to Matthew Gottlieb and the *Gottlieb* settlement class; (2) CITGO's attorneys' fees in litigating the *Gottlieb* action; (3) CITGO's costs incurred in litigating the *Gottlieb* action, including settlement administration costs; and (4) other damages suffered by CITGO in connection with MTI Connect, LLC's conduct;

B.  The Court enter judgment in favor of CITGO and against mGage, LLC in the amount of: (1) CITGO's reasonable settlement payments to Matthew Gottlieb and the *Gottlieb* settlement class; (2) CITGO's attorneys' fees in litigating the *Gottlieb* action; (3) CITGO's costs incurred in litigating the *Gottlieb* action, including settlement administration costs; and (4) other damages suffered by CITGO in connection with mGage, LLC's conduct;

C.  For such other relief as the Court deems just and proper.

Date:  October 23, 2017

Respectfully submitted,

CITGO PETROLEUM CORPORATION

Electronically Signed
By:  ___/s/ Gregory N. Heinen_____
        One of its Attorneys

Trevor J. Will (WBN 1008725)
Gregory N. Heinen (WBN 1094250)
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
414-297-5536
414-297-4900 (fax)
twill@foley.com
gheinen@foley.com

**OF COUNSEL:**
Scott C. Solberg
James J. Kylstra
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, Illinois 60604
312-660-7600
312-692-1718 (fax)
ssolberg@eimerstahl.com
jkylstra@eimerstahl.com